IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MA R.A.,[1] | ) | |
| | ) | |
| Plaintiff, | ) | No. 20 C 2155 |
| | ) | |
| v. | ) | Magistrate Judge Jeffrey Cole |
| | ) | |
| ANDREW SAUL, Commissioner of Social Security, | ) ) ) | |
| Defendant. | ) ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff applied for Disability Insurance Benefits and Supplemental Security Income under Titles II and Title XVI of the Social Security Act, 42 U.S.C. §§416(I), 423, 1381a, 1382c, just over four years ago. (Administrative Record (R.) 206-220). She claimed that she became disabled as of March 31, 2015, due to diabetes, high cholesterol, osteoarthritis, Achilles heel, sinusitis, thoracic spine, chronic knee pain, acid reflux, right ankle joint degeneration, right knee joint degeneration. (R. 215, 242). Over the next four years, plaintiff's application was denied at every level of administrative review: initial, reconsideration, administrative law judge (ALJ), and appeals council. It is the ALJ's decision that is before the court for review. See 20 C.F.R. §§404.955; 404.981. Plaintiff filed suit under 42 U.S.C. § 405(g) on March 30, 2020. The parties consented to my jurisdiction pursuant to 28 U.S.C. § 636(c) on May 7, 2020. [Dkt. #9]. Plaintiff asks the court to remand the Commissioner's decision, while the Commissioner seeks an order affirming the decision.

---

[1] Northern District of Illinois Internal Operating Procedure 22 prohibits listing the full name of the Social Security applicant in an Opinion. Therefore, the plaintiff shall be listed using only their first name and the first initial of their last name.

I.

A.

Plaintiff, born on September 17, 1957, was 61 years old at the time of the ALJ's decision on February 14, 2019. (R. 208). She has only a sixth grade education (R. 243), and cannot understand English. (R. 53). But, she has a solid work record, working steadily from 1994 to 2015. (R. 237-38). She has been a laborer and a factory worker, most recently working as a packer. (R. 243). She had to leave that job because she could no longer tolerate the lifting, walking, and standing all day. (R. 55-56).

The medical record in this case is not terribly large, as these cases go, but still covers about 350 pages. (R. 359-715). In brief, the plaintiff's main issue is as she explained at her hearing. She suffers from arthritis at the lumbar and thoracic level of her back – including a bulging disc – arthritis in both knees, and Achilles tendinitis and plantar fasciitis. She's obese, as well, which predictably exacerbates these problems.

Plaintiff had a right ankle x-ray in October 2014 that revealed tendinopathy at the right talus tendon insertion site. (R 408). X-rays of both knees in August 2015 showed degenerative disease involving especially the femoral tibial articular relationship medially, greater on the right. (R 405). Between March 2015 and October 2018, plaintiff saw Dr. Brunelle for bilateral primary osteoarthritis of knee, arthralgias, diabetes mellitus type II, pain in thoracic spine, plantar fascial fibromatosis, right ankle pain, and right foot pain. (R 419-480, 595-609, 660-82). She complained of weakness, back pain, bilateral knee pain, diffuse joint pain, right ankle pain, and right foot pain. (R. 419, 429, 439, 443, 458, 461, 674, 697). During an orthopedic visit in October 2015, plaintiff complained of right knee pain severe enough that she was unable to sleep. (R. 544). Knee

injections provided only minimal relief. (R. 544). Physical exam revealed pain even with slight touch to the medial aspect of the knee. (R. 546). Knee x-rays showed moderate arthritis in both knees mainly affecting the medial compartment and region behind the patella to the medial aspect. (R. 546). The doctor recommended physical therapy. (R. 546).

Between November 2015 and January 2016, plaintiff attended physical therapy sessions for right knee osteoarthritis, right knee pain, and gait abnormality. (R. 364-400). In December 2015, she complained of right heel and ankle pain. (R. 538). She said that physical therapy increased her knee pain and also aggravated her foot and ankle pain. (R. 538). A right foot x-ray showed calcaneal spurs in Achilles and plantar fascia. (R. 540). A thoracic x-ray in February 2016 showed diffuse spurring throughout the thoracic spine compatible with diffuse idiopathic skeletal hyperostosis. (R. 612).

At an orthopedic follow-up in March 2016, plaintiff continued to complain of left knee pain. (R. 532). A left knee MRI revealed a host of issues: tricompartmental degenerative changes, moderate within the medial joint compartment, mild-to-moderate within the patellofemoral joint, and mild within the lateral joint compartment; a grade 3 to grade 4 chondral thinning within the central weightbearing portion of the medial joint compartment; grade 3 chondral thinning throughout the patellofemoral joint with full-thickness chondral fissuring within the patellar apex and central and lateral femoral trochlea; and degenerative changes within the central body of the medical meniscus with suspected displaced flap tear off the inferior leaflet contiguous with the meniscal soft tissue extending in the tibial gutter. (R. 533-34). Plaintiff was given a steroid injection in her left knee. (R. 534).

At the end of March 2016, plaintiff was still dealing with low back pain. (R. 529). She

underwent a lumbar MRI which revealed a small left paracentral disc protrusion with an annular tear at L5-S1, a small disc bulge at L2-L3 through L4-L5 resulting a mild central spinal canal stenosis at L2-L3 and L3-L4, minimal central canal stenosis at L4-L5, a mild left neural foraminal compromise at L3-L4, and early degenerative disc disease at L4-L5 and L5-Sl. (R. 529). Plaintiff was advised to continue physical therapy. (R. 529). She had another steroid injection in her right knee in September 2016. (R. 523). In October 2016, plaintiff complained of right leg pain, numbness and tingling, and low back pain. (R. 521). She also recounted occasional numbness to the knee and the anterior portion of the leg, and reported that her entire body swelled up after her previous injection. (R. 521). The doctor noted the systemic reaction from the steroid injection and said that physical therapy was her only option. (R. 521).

In November 2016, plaintiff complained of right foot pain. (R. 517). She had pain to palpation around her Achilles tendon. (R. 518). Radiographs showed calcifications in the area. (R. 519). Diagnosis was right Achilles tendinitis; physical therapy and NSAIDs were recommended. (R. 519). Between November 2016 and January 2017, plaintiff attended physical therapy sessions for low back pain and right knee pain. (R. 558-76).

Plaintiff underwent an internal medicine consultative examination with Dr. Perumal in January 2017, in connection with her application for benefits. Plaintiff reported that she could walk 100 feet without a can, sit for 30 at a time, stand for less than an hour, and lift less than a gallon of milk with both hands. (R. 549). She was 5' 4" and 195 pounds. (R. 549). Examination revealed mild tenderness in both wrists, (R. 550). She had an antalgic gait, but was able to heel-toe walk. She could not stand or hop on one leg. She was unable to squat and rise. Grip strength was 4/5 in both hands, but fine manipulation was mildly limited. Range of motion was mildly limited in the

4

cervical spine and limited in the lumbar spine. There was tenderness in her low back, gluteal region, and right ankle. (R. 550). Reflexes and sensation were satisfactory, strength was just 3/5 in the right ankle. (R. 555). Dr. Perumal diagnosed chronic back pain, right ankle pain due to Achilles tendinitis, bilateral hand pain, and right knee pain. (R, 555).

A right ankle MRI from September 2017 showed chronic deformity and bone marrow edema involving the periosteum and surrounding soft tissues, mild tenosynovitis, plantar fasciitis involving the medial band of the plantar fascia, and moderate-sized ankle joint effusion. (R. 631-32). In March 2018, plaintiff complained of right heel pain, muscle aches, and loss of strength. (R. 616, 618). She had tenderness in right hindfoot. (AR 618.) She was diagnosed with Plantar fasciitis, right and was prescribed orthotics. (R 619). In June 2018, plaintiff complained of left knee pain and swelling. (R. 641). Examination revealed medial joint line tenderness and tenderness of the hamstring. (R. 642). A left knee x-ray revealed decreased joint space within the medial and patellofemoral joint. 643.) Diagnosis was left knee osteoarthritis with associated hamstring insertional tendinitis; the doctor gave her a cortisone injection. (R. 643, 646).

**B.**

After an administrative hearing at which plaintiff, represented by counsel, testified through an interpreter, and a vocational expert appeared and testified, the ALJ found that plaintiff was not disabled under the Social Security Act. The ALJ determined the plaintiff had the following severe impairments: degenerative joint disease of the knees, tendinopathy of the right ankle, degenerative disc disease of the lumbar spine, diabetes mellitus, and obesity. (R. 36). The ALJ found that plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the impairments listed in the Listing of Impairments, 20 C.F.R. Part

404, Subpart P, Appendix 1, focusing on the listings for disorders of the spine and diabetes. (R. 37). The ALJ then determined that plaintiff could perform light work, with a number of additional limitations: can occasionally operate hand and foot controls, cannot climb ladders, ropes, or scaffolds, can occasionally stoop, kneel, crouch, crawl, and climb ramps and stairs. (R. 38).

The ALJ went on to briefly summarize the plaintiff's claims and allegations, and the medical record. The ALJ found that the plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [her] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for reasons explained in this decision." (R. 38). The ALJ explained that medical evidence included both normal and abnormal findings, and therefore suggested her symptoms were not as severe as she alleged, and that her activities establish that she has greater capacity than she alleges. (R. 40).

The ALJ assigned great weight to the medical opinions of the two state agency doctors who reviewed plaintiff's medical records as part of her application and felt she could perform light work with some additional limitations. (R. 40). Next, the ALJ, relying on the testimony of the vocational expert, found that, given her residual functional capacity, the plaintiff could perform her past work as a machine operator (DOT 556.685-022), or as a hand packager (DOT 920.587-018). (R. 40). Accordingly, the ALJ found plaintiff not disabled and not entitled to benefits under the Act. (R. 41).

## II.

If the ALJ's decision is supported by substantial evidence, the court on judicial review must uphold that decision even if the court might have decided the case differently in the first instance. See 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might

accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Beardsley v. Colvin*, 758 F.3d 834, 836 (7th Cir. 2014). To determine whether substantial evidence exists, the court reviews the record as a whole, *Biestek v. Berryhill*, – U.S. –, –, 139 S. Ct. 1148, 1154 (2019), but does not attempt to substitute its judgment for the ALJ's by reweighing the evidence, resolving material conflicts, or reconsidering facts or the credibility of witnesses. *Beardsley*, 758 F.3d at 837. "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is entitled to benefits," the court must defer to the Commissioner's resolution of that conflict. *Binion v. Chater,* 108 F.3d 780, 782 (7th Cir.1997); *Schloesser v. Berryhill*, 870 F.3d 712, 717 (7th Cir. 2017)

The substantial evidence standard is a low hurdle to negotiate. *Biestek*, 139 S. Ct. at 1154. But, in the Seventh Circuit, the ALJ also has an obligation to build an "accurate and logical bridge" between the evidence and the result to afford the claimant meaningful judicial review of the administrative findings. *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015); *O'Connor–Spinner v. Astrue,* 627 F.3d 614, 618 (7th Cir.2010). The court has to be able to trace the path of the ALJ's reasoning from evidence to conclusion. *Minnick v. Colvin*, 775 F.3d 929, 938 (7th Cir. 2015); *Jelinek v. Astrue*, 662 F.3d 805, 812 (7th Cir. 2011). Even if the court agrees with the ultimate result, the case must be remanded if the ALJ fails in his or her obligation to build that "logical bridge." *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996)("we cannot uphold a decision by an administrative agency, any more than we can uphold a decision by a district court, if, while there is enough evidence in the record to support the decision, the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result.").

The subjectivity of the requirement – one reader might require a far sturdier bridge than

another – makes it difficult for ALJs hoping to write acceptable decisions that stand up to judicial scrutiny when challenged. But, at the same time, the Seventh Circuit has also called this requirement "lax." *Elder v. Astrue*, 529 F.3d 408, 415 (7th Cir. 2008); *Berger v. Astrue*, 516 F.3d 539, 545 (7th Cir. 2008). "If a sketchy opinion assures us that the ALJ considered the important evidence, and the opinion enables us to trace the path of the ALJ's reasoning, the ALJ has done enough." *Stephens v. Heckler*, 766 F.2d 284, 287-88 (7th Cir. 1985).

### III.

### A.

As it happens, this is a case with a "logical bridge" problem. As just stated, sometimes a sketchy opinion will allow the reviewing court to follow how the ALJ got from the medical evidence to his RFC finding and conclusion that the plaintiff can still work. There are medical records that depict young people, many unfamiliar with the demands of work, troubled by no more than a couple of mild impairments. Such records allow a court to see, without lengthy explanation, how an ALJ could find a plaintiff able to return to work on a daily basis. In those cases, there is not much of a "bridge" needed to make it from one side to the other. This is not one of those cases.

The plaintiff here is a woman in her early 60s who has worked steadily most of her life on her feet packing or operating machines. Standing, walking, bending, and twisting this way and that, for years, the body inevitably begins to break down. The plaintiff, for example, has arthritis from below her neck to her knees. There are documented arthritic issues with her thoracic spine, lumber spine, both knees. Plus, she has Achilles tendinitis and plantar fasciitis. Add to that the fact that she is obese, with a BMI of about 33 or 34 which, obviously, exacerbates the pain in her feet, ankles, knees, and back. *See Spicher v. Berryhill*, 898 F.3d 754, 758-59 (7th Cir. 2018); *Browning v. Colvin*,

8

766 F.3d 702, 704 (7th Cir. 2014); *Goins v. Colvin*, 764 F.3d 677, 681 (7th Cir. 2014).

And yet, the ALJ came to this: The plaintiff can perform light work, every day, five days a week. That means she has to be *on her feet*, standing or walking, for about six hours of every day. *Murphy v. Colvin*, 759 F.3d 811, 818 (7th Cir. 2014). Indeed, the two jobs the ALJ concluded the plaintiff could perform – her past work – require near constant standing (machine operator; DOT 556.685-022; https://occupationalinfo.org/onet/91905.html), or near constant use of arms and legs to move objects (hand packager; DOT 920.587-018; https://occupationalinfo.org/onet/98902a.html). Additionally, the ALJ found that plaintiff could stoop, kneel, crouch, crawl, and climb ramps and stairs up to one third of every workday. SSR 83-10, 1983 WL 31251 (Jan. 1, 1983). There's obviously a disconnect between the plaintiff's impairments, which the ALJ credited as severe, and the activities the ALJ concluded the plaintiff could perform with regularity. Having the ability to stand and move packages around all day is difficult to accept. An ability to kneel and crawl, even for a little bit of the time, is even a bigger stretch.

The ALJ's explanation was that sometimes plaintiff's examinations revealed normal findings: gait, straight leg raising, muscle strength. (R. 39). The ALJ relied on three examinations for those normal findings. The first was a consultative exam from January 21, 2017 (R. 548), and the findings there were *not normal* at all: antalgic gait, unable to balance or stand on one leg, unable to squat and rise, grip strength was limited, neck motion was limited, lumbar spine motion was limited, there was tenderness in the lumbar spine and in the heel and ankle. (R. 550). The other two were records from a visit to the doctor for complaints of constipation and rectal bleeding (R. 577-78), and a follow-up for plaintiff's diabetes (R. 706-09), which included a foot examination for signs of diabetic neuropathy and swelling. Neither included any examinations related to the arthritis in

9

plaintiff's back and knees, or her Achilles tendinitis. It's remarkable the ALJ gravitated to these records, as he was well aware that this case was about plaintiff's back, knees, and ankles. In any case, the three examples of so-called "normal" findings (R. 39) lend no support to the ALJ's conclusions whatsoever. "[T]he primary piece of evidence that []he relied on does not support the propositions for which it is cited." *Scott v. Astrue*, 647 F.3d 734, 740 (7th Cir. 2011). *See also Bjornson v. Astrue*, 671 F.3d 640, 649 (7th Cir. 2012)("the administrative law judge's opinion failed to build a bridge between the medical evidence . . . and the conclusion that she is able to work full time in a [light] occupation . . . .").

    The ALJ then said that the plaintiff:

> testified that she continued to experience significant back pain. She explained that she tried steroid injections with no improvement, and received little improvement with physical therapy and pain medication. She testified that he could stand for 20 minutes before needing to sit, and can lift half a gallon. She further testified that she took naps during the day. To accommodate the claimant's impairments I have limited her light work, with the postural and manipulative limitations outlined in the above residual functional capacity.

(R. 39). That, quite simply, explains nothing. Again, there is no reasoning to get the reviewing court from pain, standing for no more than 20 minutes at a time, lifting a gallon of milk, and naps, to standing and walking all day, and kneeling and crawling up to a third of the day. In short, there is "logical bridge" between the evidence and the ALJ's conclusion.

    Next, the ALJ considered the plaintiff's obesity. But, here, again, there was no explanation, only conclusions that do not withstand examination. The ALJ said that he considered the plaintiff's obesity and the exacerbating effect it had on her other impairments and concluded that it actually did exacerbate her lower extremity impairments. (R. 39). But, then, he found that despite her obesity, there were no added limitations on her ability to do light work other than those postural

limitations he already found. So, after the ALJ specifically found that plaintiff's obesity added to the limitations stemming from her arthritis, it's not clear at all that he actually accounted for this in his RFC finding. The court's observation in *Goins v. Colvin*, 764 F.3d 677, 682 (7th Cir. 2014) seems apt here: "If we thought the Social Security Administration and its lawyers had a sense of humor, we would think it a joke for . . . the administrative law judge [to have] accommodated [the plaintiff's] obesity by providing that she . . . could only occasionally climb ramps or stairs, balance, kneel, crawl, stoop, and/or crouch."

**B.**

Then there is the ALJ's formulaic and inconsistent assessment of the plaintiff's allegations regarding her symptoms. He said that the plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [her] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for reasons explained in this decision." (R. 38). The reasons the ALJ gave were the objective medical evidence, which, as already discussed, is not so benign as the ALJ depicted it, and the plaintiff's daily activities. But these reasons don't hold water, and so this is an occasion where the ALJ's assessment – special deference and all notwithstanding – does not withstand scrutiny. *Ray v. Berryhill*, 915 F.3d 486, 490 (7th Cir. 2019); *Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009).

An ALJ is required to consider a claimant's activities of daily living in evaluating his or her subjective allegations. SSR 16-3p; *Moss v. Astrue*, 555 F.3d 556, 562 (7th Cir. 2009) ("an ALJ cannot disregard a claimant's limitations in performing household activities"). The ALJ failed to do that here, or at least didn't do it in a way that allows one to follow the path of his reasoning. The

11

ALJ concluded that "the evidence of the claimant's daily activities along with the objective medical evidence . . . establish that the claimant has a greater sustained capacity than she alleges." (R. 40). It's not clear from the ALJ's opinion what daily activities the ALJ is referring to. (R. 36-40). The only mention the ALJ made of activities was that plaintiff "testified that she could stand for 20 minutes before needing to sit and can lift half a gallon [and that] she took naps during the day." (R. 39).

Those "activities" also lend no support to the ALJ's RFC finding and seem perfectly consistent with the objective medical evidence. In fact, had the ALJ actually considered plaintiff's activities, he would have seen that they were extremely limited. Plaintiff reported that her daughter helped her get in and out of the shower, brushed her hair and cooked for her. (R. 308-09). She performed no household chores due to her joint pain. (R. 310). Plaintiff testified that she had difficulty cooking because of the pain in her hands. (R. 62). She dropped utensils while cooking. (R. 62). She was unable to make her bed due to the pain. (R. 62). She was unable to take a bath or dress herself; her daughter had to help. (R. 64-65). "These minimal daily activities do not support the ALJ's finding that [plaintiff] exaggerated h[er] is symptoms, nor do they support the ultimate RFC." *Ray*, 915 F.3d at 491. *See also Richards v. Berryhill*, 743 F. App'x 26, 29 (7th Cir. 2018); *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir.2000) ("minimal daily activities" such as preparing simple meals, weekly grocery shopping, taking care of family member, and playing cards "do not establish that a person is capable of engaging in substantial physical activity"). And it only got worse as the ALJ next explained that he accommodated these limitations by limiting plaintiff to light work – standing most of the day – and spending up to two hours a day stooping, kneeling, crouching, crawling, and climbing ramps and stairs. With all respect, this simply makes no sense.

As for the objective medical evidence supporting a rejection of plaintiff's allegations, that has already been addressed at length. To that discussion, this can be added: the ALJ completely ignored that, in addition to arthritis in her lumbosacral spine, knees and ankles, plaintiff also has documented arthritic spurring throughout her thoracic spine. While, as the Commissioner argues, the ALJ found plaintiff "has a spinal impairment," the ALJ mentioned only the findings regarding plaintiff's lumbosacral spine. (R. 39). The ALJ did not so much as hint at any arthritic issues further up plaintiff's back. An ALJ doesn't have to discuss every piece of evidence in a medical record, but he can't ignore evidence that goes against his conclusions. *Lambert v. Berryhill*, 896 F.3d 768, 777 (7th Cir. 2018); *Thomas v. Colvin*, 745 F.3d 802, 806 (7th Cir. 2014); *Arnett v. Astrue*, 676 F.3d 586, 592 (7th Cir.2012).

## C.

So, this case must be remanded due to the lack of reasoning to allow the reviewer to trace the ALJ's path of reasoning from the fact of the plaintiff's lumbar and thoracic arthritis, knee arthritis, ankle tendinitis, plantar fasciitis, and obesity to his conclusion that plaintiff could engage in work requiring standing and walking most of the day, every day – not to mention kneeling and crawling. As it stands, there is only one explanation of how the ALJ got from point A – the medical evidence – to point B – an RFC for light work. There's an elephant in the room. At plaintiff's age, if the ALJ had found plaintiff were limited to sedentary work – which might be an easier conclusion to accept, if properly explained – she would be unable to perform her past work, which was light to medium, and would be disabled under the Medical-Vocational Guidelines unless other work requires "very little, if any, vocational adjustment." 20 CFR Pt. 404, Subpt. P, App. 2, §. 201.00(f). Even if plaintiff were limited to "light work," but could not perform her past work due to, perhaps, an

13

inability to stand all day, the same issue would arise. 20 C.F.R. Subpart P, App. 2, §. 202.00(f). In addition, the plaintiff is unable to understand English, so that made her an even worse candidate for the ALJ to employ the Grid.

## CONCLUSION

For the foregoing reasons, the defendant's motion for summary judgment [Dkt. #16] is denied, and this case is remanded to the Commissioner for further proceedings.

ENTERED: _____
UNITED STATES MAGISTRATE JUDGE

**DATE:** 1/26/21